## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

TERRY L. DUNN-FISCHER,
individually, as a parent

Plaintiff,

v.                                                    Case No. 2:10-cv-00512-JES-SPC

COLLIER COUNTY SCHOOL
BOARD, Laurence Ruble, individually, and
in his official capacity as Head of Psychological
Services for CCSD, Brian Castellani, individually,
and in his official capacity as LEA, and Principle of        **SECOND AMENDED**
Seagate Elementary School, DR. VICTORIA                  **COMPLAINT/APPEAL OF**
SARTORIO, individually, and in her official             **STATE EDUCATION AGENCY**
capacity as Director of ESE, CCSD, DR.                        **DECISIONS**
ELIZABETH MCBRIDE, individually, and
in her official capacity of IEP member and
Assistant Director of ESE, CCSD, FLORIDA                      **JURY DEMAND**
DEPARTMENT OF EDUCATION, in their
professional capacity, as Governing agency,
THE FLORIDA DEPARTMENT OF
ADMINISTRATIVE HEARINGS, in their
Judiciary capacity,

Defendants,
_____/

## SECOND AMENDED COMPLAINT

Comes Now Plaintiff, Terry Dunn-Fischer, Individually, as a parent of a child with

multiple disabilities, files this Second Amended Complaint *pro se* under (28 U.S.C.

1654), (42 U.S.C. 1983), and (42 U.S.C. 1988). The Plaintiff files this Second Amended

Complaint, pursuant to FL. Rule 1.100, 1.110, 1.190, as a curative action, against this

court's Orders to obtain counsel for child, (Doc.#52 and 53) and Defendants Motions to

Dismiss, in *toto* for format and has filed a Motion requesting leave to do so, pursuant to Fl. Rule 1.160 and Local Rule 3.01, 3.05, and FRCP 8, 10, 15. Defendants have not filed answers to Plaintiff's First Amended complaint as a "responsive pleading".

## CLAIMS

1. Plaintiff alleges, claims, and states; that she as the Parent of a child with multiple disabilities (A.D.-F.) recognized under IDEA and Section 504, has the right to Appeal the Administrative Hearing Officers (ALJ) decisions, Case No. 09-1050 E, under power of her IDEA Procedural Safeguards (20 U.S.C. 1415) and her Section 504 of the Rehabilitation Act Procedural Safeguards (34 CFR 104.36), (29 U.S.C. 794), individually, which grants parents independent, enforceable rights to a free appropriate public education and also entitles them to prosecute claims on their own behalf. The statutory right to self-representation and Parents have a Statutory Right to bring claims for Substantive and Procedural Violations of the "IDEA" and may bring such claims without an attorney (28 U.S.C § 1654) which provides that "in all courts of the United States the parties may plead and conduct their own cases personally or by counsel" and under "state requirement" of (42 U.S.C. 1983), see Winkelman v. Parma City School District, 550 US 516 (2007)

2. Plaintiff claims Defendant's at all times relevant, violated her rights under; the Equal Protection and Due Process of Law Clauses of the United States Constitution; the Individual Disability Educational Act of 1997 and 2004 (hereinafter "IDEA'), see (20 U.S.C. 1703) and (20 U.S.C. 1415,1414,1400); the Rehabilitation Act of 1973 (hereinafter "Section 504"), see (29 U.S.C. 794); the Americans with Disability Act

(hereinafter "ADA"), see (42 U.S.C. 12101, 12131-12134) and all related State statues consist with Federal laws to provide a FAPE.

3.    Plaintiff claims that the etiology and foundation of this case, originated back in September 2005, when CCSDD refused to comply with the mandated provisions of "child Find" under IDEA and Section 504, which resulted in violations under the ADA. The Plaintiff was denied the opportunity to a FAPE, when she was denied her procedural safeguards, upon her request for evaluation due to her child's lack of progress in the general curriculum. The refusal of GGSD to initiate the child find provisions created procedural violations, by refusing to evaluate the child for a disability.  Defendants actions created, sustained and continued the denial of a FAPE and the Plaintiff was unable to exercise her right to obtain the same for her child, due to lack of knowledge of her procedural safeguards under IDEA and Section 504.  She also claims, that it was CCSD's responsibility to inform the parent of the procedural process, provide her clear and understandable procedural safeguards, and a FAPE.  She further states that at all times relevant, named Defendant's actions and conduct were committed by persons acting under color of State Law, and that as a result of this conduct Plaintiff was deprived of rights, privileges or immunities secured by the Constitution and or the Laws of the United States of America.

4.    Defendant's are being sued individually and in their official capacities for their conduct, actions, and violations which created injury and resulted in damages, see Monell v Department of Social Services 436 U.S. 658,724 (1978), (42 U.S.C. 1983) and (42 U.S.C. 1988)

## PARTIES

3

5.     Plaintiff, Terry L. Dunn-Fischer is an individual who has a disability and a parent

of a child with multiple disabilities, who was eligible under the IDEA and Section 504 of

the Rehabilitation Act to a Free Appropriate Public Education (FAPE) and equal

protection against discrimination under Title II of the ADA. She is the "single" parent

who was and is responsible for the child's care, custody, advocacy and control.  She has

the right to exercise her Procedural Safeguard, in this court setting. The parent had been a

home owner (paying property taxes to include public school costs) from 2003 to 2011

and a resident in the town of Naples, located in Collier County, in the State of Florida,

within the Collier County School District continuously from July 2003 to September

2009, when the child was age 3- 9 years old, with rights pursuant to IDEA part B, **see**

**exhibit's J**.

6.     Defendant Collier County School Board/District (CCSD) is, a political

subdivision of the State of Florida with the responsibility of providing school children,

with disabilities, a FAPE under IDEA and Section 504.  Defendant "CCSD" is

responsible for providing, enforcing, and ensuring that parents receive their "Notice of

Parental Procedural Safeguards" upon request of the parent for an evaluation and there

after in a clear comprehensive and informed consent fashion. CCSD receives Federal

financial assistance and is a public entity as defined by IDEA, (20 U.S.C. 1400-1415),

and Section 504, (29 U.S.C. 794) and are accountable under the protection of the non

discrimination Act, the "ADA"(42 U.S.C. § 12101 and 12131-12134). CCSD is being

sued in their "person" and professional capacity, **see exhibits P.**

7.     Defendant Laurence Ruble was, the Head of Psychological Services and the 504

Coordinator in the School District at the time, September 2005 to 2009,  that the

4

violations/injuries herein alleged occurred. Defendant Laurence Ruble was responsible for providing, enforcing and ensuring that the parents receive their "Notice of Procedural Safeguards" under Section 504 and evaluations under the IDEA.  He is being sued in both his individual "person" and in his official capacities, **see exhibits M**.

8.    Defendant <u>Brian Castellani</u> is, and was at all times relevant to this action, the Principal of Seagate Elementary School. Seagate Elementary School is a public school, with a history of being a "clustered" gifted school, located within the CCSD.  He was responsible to provide in writing, to parent their "Notice of Parental Procedural Safeguards" under the IDEA and Section 504. He is and was at all times relevant responsible for enforcing his employees compliance of informed consent under and all other mandated provisions of State and Federal Laws, to include but not limited to the provisions of the IDEA, Section 504, and the non discriminatory protection, to include but not limited to the ADA (42 U.S.C. Section 12101and Sections 12131-12134) pursuant to all state and federal laws. He is responsible for the allocation of funds, and services, received under IDEA. He was the LEA and responsible for the provision of a FAPE.  He was an IEP member and in attendance as the LEA, while the child was a student in the CCSD and had every ability to comply, enforce the mandated provisions and stop the violations.  He is being sued as an individual "person" and in his official capacities, as a local government employee, **see exhibits G.**

9.    Defendant <u>Dr. Elizabeth McBride</u>, was at all times relevant to this action, the assistant director of ESE, for CCSD.  She was also one of the child's IEP team members, at Seagate Elementary.  She withheld information and refused to inform the parent upon her request of her parental rights under her procedural safeguard's consistent with the

5

provisions of a FAPE under IDEA. She participated as an IEP member and withheld information and clarification, from the parent related to CCSD's deliberate refusal to: withhold information and knowledge relevant to the; identify, appropriately evaluate, appropriately re-evaluate, to obtain a FAPE thought the IEP process. She participated in causing the injuries and preventing the ongoing damages. She is being sued in both her individual "person" and in her, local government administrative official capacities.

10.     Defendant Dr. Victoria Sartorio, was and is, the Director of Exceptional Student Education the (ESE) Department. She ignored the Parent's multiple written requests for knowledge, information, clarification and investigation, per the parents' rights under her procedural safeguards. She had the responsibility and liability to do so and showed deliberate indifference to the same. Her actions added to the denial of a FAPE for she had the ability and responsibility to stop the violations related to the denial of a FAPE. She had the responsibility to monitor compliance of her assistances actions, pursuant to state and federal laws. She displayed "Deliberate Indifference", thereby she was a party to the act and violated the fundamental nondiscrimination mandates of the ADA. She failed to monitor that, the child, and all students with SLD disabilities, (specifically the LD of Dyslexia and its related disabilities) in the CCSD obtain appropriate evaluations under IDEA to insure and receive a FAPE. She is being sued in both her individual and official capacities, **see exhibits E and N.**

11.     Defendant, The Florida Department of Education, (FDOE) is the Government Agency responsible and liable to enforce and ensure that all Parent receive "Notice of Parental Procedural Safeguards" in compliance an understandable informed consent fashion under IDEA (20 U.S.C. 1400-1415) and that all Local agencies (including it's

6

employee's) are in compliance with the mandated provisions under IDEA (20 U.S.C.
1400) . They are burdened with the ultimate responsibility to monitor, enforce and
prevent the denial of a FAPE, by their local agencies employee's. They are responsible to
ensure the proper services are being provided to students with disabilities and that the
provisions of identification and evaluations are present in a child's ESE file and have the
responsibility and power to stop violations. The FDOE was responsible to ensure that the
Plaintiff's due process of law and equal protection rights of the constitution are not
violated (20 U.S.C. 1415,1414,1400); the Americans with Disability Act (hereinafter
"ADA"), see (42 U.S.C. 12101, 12131-12134), see Mark H. v. Hamamoto, 620 F. 3d
1090-Court of Appeal, 9th Circuit (2010).

    12.   The "FDOE", is a municipality and has the responsibility and obligation
pursuant to IDEA (20 U.S.C.1415) , to provide a Parent upon her written request, a fair
Due Process Hearing, in a timely fashion, by a "impartial" non biased, knowledgeable
hearing officer. FDOE failed to provide, insure, and monitor the Plaintiff's due process
hearing time line. They failed to stop the Florida Department of Administrative Hearing
officer's prolonged due process hearing and unnecessary delay of their ruling for 17
months and enforce the time lines, of 45 days.  They displayed "Deliberate Indifference"
(42 U.S.C. 12101) thereby they were a party to procedural violations; they are being sued
in their official capacity, **see exhibits P.**

    13.   The Florida Department of Administrative Hearings (FDOAH), is an Local
State Agency hired by, and paid with Federal funds FDOE, to obtain and assign a non
biased, impartial, hearing officer, at the Administrative level, pursuant to the provisions
of IDEA (20 U.S.C.1415)  and Section 504 (29 U.S.C. 794) per the Plaintiff's "Parental

Procedural Safeguards", accountable under (42 U.S.C. 1983). That "Hearing Officer" has the responsibility and obligation to insure and conduct a non biased hearing in a timely fashion, consistent with the state and federal laws. FDOAH and FDOE have the responsibility and obligation to insure these guidelines and provisions are followed. FDOAH "assigned hearing officers", first and second, 2 (two) both ignored, Plaintiff's request for any and all requested accommodations, to have equal access the due process of law at the administrative level, as adequately as a non disabled peer, ADA(42 U.S.C. 1983). FDOAH's procedural violations, of intertwining the Plaintiff's IDEA and Section 504, hearing decisions prevent the Plaintiff from her right to Appeal her Section 504 decision to the Office of Civil Rights and the Department of Justice under the ADA.

14.     At all times relevant herein, Defendants acted under color of state law.

## JURISDICTION AND VENUE

15.     Jurisdiction is conferred upon this court by (28 U.S.C. 1654) (28 U.S.C 1331, 1332, 1343); (28 U.S.C. 2201 and 2202) and (42 U.S.C. 1983); (42 U.S.C. 1988), (42 U.S.C. § 12188(a)(1),; the IDEA, (20 U.S.C. 1415, 1414, 1400 et. seq.); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), (34 CFR 104.36), ADA (42 U.S.C. 794); and the Due Process and Equal Protection Clauses of the United States Constitution.

16.     Additionally, this Court has pendant Jurisdiction to adjudicate any state claims which arise out of the same facts as the federal claims asserted herein and (28 U.S.C. § 1367), **see exhibits R.**

17.     Venue is proper in the United States District Court of the Middle District of Florida, Fort Myers Division, as authorized by (28 U.S.C. 1391 and 1392).

## REQUEST FOR ACCOMMODATIONS

8

18.    Plaintiff, individually requests necessary accommodations under the ADA Title

II.  Plaintiff refers to her rights and this courts obligations under the Americans with

Disabilities Act of 1990 (ADA) (42 U.S.C. §§ 12101-12213).  The provision of

accommodations to individuals with disabilities, Local Rule 2.540:  That Plaintiff has

made a written request for Accommodations, due to her history of a Language based

disability and further states the rule Subdivision (a), Duties of Court, recognizes the court

system's obligation to provide accommodations to qualified persons with disabilities.

This subdivision provides that a qualified individual with a disability will be provided, at

the court's expense, with accommodations, reasonable modifications to court rules and

practices, and the provision of auxiliary aids or services.

### FACTUAL & PROCEDURAL BACKGROUND HISTORY OF CASE

19.    The Plaintiff filed an original Complaint in this District Court (Doc. #1) on

August 23, 2010, in pro se form, within 90 days as per her Procedural Safeguard Rights

to Appeal an administrative decision/rulings under IDEA (42 U.S.C. 794) and Section

504 of the Rehabilitation Act, (29 U.S.C. 794),(34 CFR 104.36) pursuant to exhausting

her administrative remedies, under IDEA and Section 504, and her right to Appeal the

IHO decisions.

20.    Plaintiff then filed an Amended Complaint as a curative action, for format

discrepancies on November, 29, 2010 (Doc. #39) accepted by this court, as her "first

amended complaint" to be consistent with this courts FRCP and Local rules.

21.    Plaintiff now files this "Second Amended Complaint" Individually, to be

consistent with and pursuant to her Parental Rights under her Procedural Safeguards as a

parent of a child with a disability, which was denied a FAPE, under the IDEA and Section 504, and the ADA individually in pro se, form.

22.     The Plaintiff, as does her child, has a language based learning disability, which was brought to the attention of CCSD employee's as early as December 2005, the IHO attention and this courts attention in her complaint, she has requested accommodations, for herself under the ADA, to access this court process, as her non disabled peers.

23.     The Plaintiff, Terry Dunn-Fischer has been advised, by this court and Ordered (Doc. #52 and 53), to obtain counsel for her child, who was a party to this action, stating she does not have the right to file an appeal of the IHO due process hearing decisions under IDEA and Section 504, in this Federal Court. That this Federal Court (11th Circuit) does not recognize her rights as the parent of A.D.-F. to enforce "the child's right" as a minor, for the denial of a FAPE, as the child's representative, in *pro se* fashion, since she is not an attorney, even thought she is a party "aggrieved" to the violations, injury, damages, and decisions of the IHO, see M

24.     Plaintiff is unable to obtain counsel for her minor child, due to financial reasons, which were created by and consistent with the costs associated with the Defendant's denial of a FAPE, to include but not limited to; the 17 month due process hearing expense, the attorney fee's, private evaluations, tutor costs, doctors costs, and the need to place the child appropriately, in the interim during the hearing phase, and to include private school placement for her remedial needs and transportation related to the same.

25.     Plaintiff, Terry L. Dunn-Fischer, moves forward *pro se* and files this Second Amended Complaint, individually on the guidance and clarification by this court's order of her right to do so per, (28 U.S.C. 1654) and (42 U.S.C. 1983), pursuant to her

Procedural Safeguard's under IDEA, (20 U.S.C 1415) and Section 504 (29 U.S.C. 794) and the ADA(42 U.S.C. 1983) and the Due process and Equal Protection Clauses of the United States Constitution.

26.     Plaintiff moves forward in her complaint independently see, <u>Winkelman v. Parma City School District, 550 US 516</u> (2007) and <u>Winkelman</u> 550 US at 535. "The U.S. Supreme Court has ruled that the Winkelman's have the right as parents to use the federal courts to enforce special education rights for a disabled child without having to hire a lawyer. The Supreme Court said that the Individuals with Disabilities Education Act (IDEA), which grants parents independent, enforceable rights to free appropriate public education, also entitles them to prosecute IDEA claims on their own behalf", see <u>Andrews v. Bechtel Power Corp.,780 F.2d 124, 137</u> (1st Cir.1985), cert. denied, 476 U.S. 1172 (1986); <u>O'Reilly v. New York Times Co., 692 F.2d 863, 867</u> (2d Cir.1982); In re <u>Las Colinas Dev. Corp., 585 F.2d 7, 12 (1st Cir.1978), cert. denied, 440 U.S. 931</u> (1979).

27.     Plaintiff's child was, born on February 3, 2000, and resided in the town of Naples, County of Collier, and State of Florida, from July 2003, age 3 to September 2009, age 9. She was a Collier County public school student at all times relevant.

28.     During the 2005-2006 the child attended Kindergarten at Seagate Elementary (her home based school placement) in the Collier County School District, and displayed a significant academic deficiency, as early as September 2005. Plaintiff was denied her procedural safeguards under IDEA and Section 504 upon her request and referral for an evaluation as early as December 2005.  She was denied the right to be evaluated to determine eligibility, "Child Find Provisions" to seek out and identify, under IDEA and or Section 504. Plaintiff's requests were denied by teachers and the Defendant, the

Principle Mr. Castellani. CCSD refused to evaluate or refer the child for evaluations upon the Plaintiff's written request to address the child's education deficiencies, for the child be placed in a "special reading class' and be evaluated. The child made no progress in the school year 2005-2006 (kindergarten) and in fact acquired a significant "gap" of an educational discrepancy.  CCSD proposed only to retain the child, in Kindergarten for her academic deficiencies and lack of meeting the State "sunshine standards" see (20 U.S.C. 1412(a)(3); *Knable v. Bexley, 238 F.3d 755* (6th Cir. 2001) and (34 C.F.R. 303.321) consistent with Part B of IDEA 2004 (34 C.F.R. 300.128), **see exhibits D, E, F, K.**

29.     FDOE, had NOT revised their state statues to be consistent with the 2004 IDEA regulations to include the "RtI model" and CCSD continued to use the 1997 IDEA guidelines, until 2010. Section 504 does not have a statue of limitations, related to violations.  CCSD did not use RtI or scientifically proven interventions, **see exhibit A.**

30.     Plaintiff submitted written Doctors request to evaluate for Psy and SLD.  CCSD personnel Mr. Laurence Ruble and assistant superintendent Dr. Kelley written refused to, do so, without attachment,  and did not give the Plaintiff "Notice of her procedural safeguards under IDEA and or Section 504, see (34 C.F.R. § 300.226(c)),**see exhibit H and P.**

31.     During the summer of 2006, Plaintiff took the child to a Psychiatrist, as per the Dr. Duncan's, submitted request to CCSD and referral, for evaluation, at her own expense. Psychiatrist Dr. Mack referred child to a child Psychologist for a diagnostic Psychological-Educational evaluation and referred the Plaintiff to a "reading tutor". Plaintiff complied with referrals and paid for all services, out of her own pocket. She had not been given "notice of her procedural safeguards" in *toto* by CCSD Defendant's.

32.    During the 2006-2007 school year, the child was administratively placed by Defendant Mr. Castellani, in the First grade, in a "inclusion" classroom setting, see Jarron Draper v. Atlanta Independent School System (11th Cir. 2008), **see exhibit G.**

33.    CCSD did not inform the Plaintiff, (August 2006) that Dr. McGinnis's evaluation was an incomplete "comprehensive evaluation for a learning disability" seen as plaintiffs first submitted- Independent Educational Evaluation, (IEE) therefore CCSD used his findings, as a base for eligibility for services in the classification of Other health Impaired "OHI" pursuant to the IDEA and Dr. Duncan's diagnosis of ADHD but ignored Mr. Mack's, Dr. Duncan's and Dr. McGinnis finds of the likeliness and potential of a SLD "dyslexia", parent was not made aware, that it was an incomplete evaluation, until March 2008 by CCSD. **see exhibit M.**

34.    Plaintiff signed a "Parental consent for evaluation", by CCSD, which parent was lead to believe necessary, as per "state guidelines". Parent was not given her procedural safeguards under IDEA and or Section 504, at this time. CCSD performed no more then an "addendum" to the IEE to support the OHI eligibility category and failed to give knowledge or inform the parent that their evaluation was to be a limited evaluation process, **see exhibits L.**

35.    The Special Education IDEA, Procedural Safeguards are Parent Rights for Special Education Programs which are enforceable and provide mandated procedural guidelines and district compliance of/with: The functions of the Individualized Education Program (IEP) team; Identification, Assessment and Evaluations; Parent Participation in IEP team meetings and parent consent; Filing formal complaints, mediation, due process hearings, and appeals; Interim alternative educational settings; Parent placement of their

13

children in private schools; Civil court actions; Development of an <u>IEP;</u> Placement decisions and <u>Specially Designed Instruction</u> and related services.

36.     Plaintiff was denied any knowledge of her procedural safeguards under Section 504 of the Rehabilitation Act of 1973 (42 U.S.C. 794), thus Defendant's CCSD and it's employee's never provided the Plaintiff with her "Notice of Parents Right/Procedural Safeguards".

37.     The Plaintiff's child had a history and a record of an educational deficit and disability that impeded a major like activity, **learning**, therefore she was entitled to special education related services that were non exhaustive to allow her to access an education as adequately as a non disabled peer and should have been identified as a qualities individual with a disability under Section 504 as early as September 2005. The denial of the provisions of FAPE under Section 504, is a violation under her rights of the ADA, **see attached exhibit M**, dated March of 2009.

38.     Notice of Parental Rights, her "procedural safeguards" under Section 504 of the Rehabilitation Act 1973 (34 CFR 104.32). Section 504, does not have a statue of limitations and it reads: The intent of the law is to keep the parent, fully informed concerning decisions about their child and to inform them of their parental rights so that they have the opportunity and equal access to participant's in the enforcement to obtain a FAPE, for their child: You have a right to be informed by the school district of your rights under Section 504. (The purpose of this Notice form is to advise you of those rights, (34 CFR 104.32.), Your child has the right to an appropriate education designed to meet his/her individual educational needs as adequately as the needs of non-disabled students are met, your child has the right to free educational services, your child has a

right to an evaluation prior to an initial Section 504 placement, testing and other evaluation procedures must conform to the requirements (34 CFR 104.35) as to validation, administration, areas of evaluation, etc. The District shall consider information from a variety of sources, including aptitude and achievement tests, teacher recommendations, physical condition, social and cultural background, adaptive behavior, physical or medical reports, student grades, progress reports, parent observations, and anecdotal reports, your child has a right to periodic reevaluations, you have the right to notice prior to any action by the District in regard to the identification and evaluation. You have a right to an impartial hearing with respect to the District's actions regarding your child's identification, evaluation, or educational placement.  If you disagree with the decision of the "impartial" hearing officer, you have a right to review of that decision by a court of competent jurisdiction and You have the right to file a complaint with the Office for Civil Rights, (34 CFR 104.36.) see <u>Mark H. v. Hamamoto, 620 F. 3d 1090-</u> <u>Court of Appeal, 9th Circuit</u> (2010) and a  "negative prohibition against disability discrimination in federally-funded programs, see  (<u>Neena S. v. The Sch. Dist. of</u> <u>Philadelphia, No. 05-5404, 2008 WL 5273546</u> *6 (E.D. Pa. Dec. 19, 2008).

39.     During the school year 2006-2007 the CCSD employees did not inform the parent that the child was not given a comprehensive evaluation as mandated by the IDEA to identify all of the child's disability related needs and that the IEE she submitted was "incomplete".  Parent was lead to believe that the "entire" child has been assessed to obtain an appropriate IEP. After and only after the IEP was created by the IEP team, did the parent receive a copy of a pamphlet titled procedural safeguards.  Parent was not explained in a informed fashion of IDEA/section 504/ or the provision of FAPE, she did

inform the IEP team of her own, disability and was lead to believe that the problem was solved; of CCSD refusal to evaluate, and that all written requested "evaluations" by child's doctors were noted and complied with. The Plaintiff continued to maintain the private tutor at her own expense and CCSD personnel were aware, of this ongoing "out of pocket expense". Parent was also lead to believe that CCSD's refusal "violations" to appropriately evaluate the child, were resolved, due to lack of knowledge, see Tereance D. and Wanda D. v. Sch. Dist. Philadelphia (E.D. PA 2008), **see exhibit G and K**.

40.     That by December 2006, in first grade, Ms. Richardson and the ESE teacher, attended a Parent conference with Plaintiff to address the child's "lack of progress" and high potential for "retention", as was consistent with "CCSD" request for the same in Kindergarten. CCSD employee's never referred the child for further evaluations, or requested an IEP team meeting, they relied on the parent's ignorance, lack of knowledge and understanding due to her own "language based disability" to violate the "continual evaluations and reevaluation provisions" under IDEA. Plaintiff's agreement with the CCSD's employees' clarification of the child's lack of progress and grave academic present level deficiency, but disputes the concept that by identifying the child's lack of progress and remedial needs did she forfeit her rights, for compliance of the mandated provisions under IDEA for CCSD to further evaluate or call an IEP meeting to initiate more or difference interventions and services into the child's IEP, due to child not making progress in the general curriculum, see Amanda C. v. Clark Co Sch. Dist. & Nevada Dept. of Ed, (9th Cir. 2001), **see exhibit D.**

41.     Plaintiff was advised in writing, on or about February 2007, by Defendant Mr. Castallani, that the child would be retained, in first grade. CCSD failed to comply with

the further and continues evaluation process consistent with IDEA; when a child, with an IEP is not progressing or advised the parent of her rights per her procedural safeguards to request the same. The child was denied and services over the summer school, just the provision of retention, for her lack of progress, see Zachary Deal v. Hamilton County TN Board of Ed (6th Cir. 2004).

42.     On or around August 2007, Plaintiff attended an IEP meeting and requested a "Dyslexia evaluation" by way of Dr Mack's, most recent assessment and presented Dr. Mack's written request to further evaluate and provide appropriate services to the child, due to the child's lack of measurable progress in the prior year, per her retention status, **see exhibits J.**

43.     CCSD refused to recognize the child's multiple exceptionalities and did not perform "further evaluations" as mandated by IDEA, or a dyslexia evaluation" or a comprehensive educational evaluation consistent with a (SLD) per parents request. In fact, the IEP team presented a Parent Consent Form, which parent signed for an evaluation, which later shows, that the CCSD only intended to perform, a Process test as an evaluation to support only the diagnosis of ADHD and eligibility under OHI. The IEP team did not clarify or give written notice that they intended to remove the "math goal" in the child's IEP or give "informed consent" per the parent's request for a comprehensive Learning disability evaluation consistent with her rights under her Procedural Safeguards, see Weast v. Schaffer (4th Cir. 2004) and Muller v. East Islip (2nd Cir. 1998).

44.     On or around October 2007, the IEP team reconvened to discuss the findings of the "evaluation". At no time did CCSD give the parent "written notice of refusal to perform the requested comprehensive evaluations and advise the parent that in fact they

were refusing to perform the same. CCSD's evaluation, did not make the child eligible for services under the category of SLD. The Plaintiff clearly disagreed with the Testers (school psychologist) outcomes for they were inconsistent with her present levels in all area, and questioned her about her lack of "having the child write anything during the "evaluation" or assessing the child's classroom written expression. The Plaintiff was extremely upset with the finding and the statement, by the school Psychologist that "there is no such thing as Dyslexia". At no time did the IEP team, advised the parent that "per her procedural safeguards, under IDEA that she had a right to request and IEE, if she disagreed with CCSD finding, in writing with in 10 days of the IEP teams decision, per her IDEA parental rights. There is no such document to show that CCSD, complied with written notice of the same. Plaintiff was unable to exercise, this right, **see exhibit L.**

45.     In fact, Plaintiff disagreed with the evaluation results, contacted Ms. Cosgrove's, supervisor, Defendant Laurence Ruble, related to the confusing and inconsistent evaluation results and lack of testing areas in the evaluation, to request an investigation of the evaluation format and incongruence of performing a SLD evaluation, without assessing the child's writing, spelling and math skills. She also requested the same of Mr. Castellani, the LEA and building principle, **see exhibit G.**

46.     On or about November 2007 Plaintiff meet with Defendant Mr. Laurence Ruble "head of Psychological services", he was the overseer of evaluations and was also the 504 coordinator (29 U.S.C. 794), on two occasions, to discuss her disagreement with the his employee's evaluation results, the lack of progress the child made under the OHI category of IDEA and the learning disability known as Dyslexia. The outcome of the meeting, was that based on the evaluation, the child did not have a SLD. At no time, did

Mr. Ruble or Mr. Castellani, advise the parent of or give the parent a copy of her IDEA or Section 504, procedural safeguards that clearly informed the parent that there were Federal laws, to protect the child with guidelines of the process a school must comply with and a parents right to exercise those rights to the mandated provisions, to include "child find evaluations" and "IEE's" under (20 USC 1400-1415). Defendant Mr. Ruble did sent the parent away, with handouts related to children with SLD's and Dyslexia and the "parent burnout, of children with LD" he did not clarify the child's evaluation, was not a SLD evaluation, see <u>Joseph James v. Upper Arlington Sch. District</u> (6th Cir. 2000) and <u>Goleta Union Elementary Sch. Dist v. Andrew Ordway</u> (C.D. Cal. 2002).

47.    On and around March 7-9 2008, Mr. Laurence Ruble, advise and gave clear knowledge in writing, to the Plaintiff, that " **NO CCSD, HAS NEVER PERFORMED A SLD EVALUTATION ON THE CHILD"** citing, *Doe v. Ala. State Dep't of Educ.,* <u>915 F.2d 651, 654 </u>(11th Cir.1990) and **see exhibit M and N.**

48.    On or about March through April, the Plaintiff submitted 2 (two) IEE's to the IEP team, that clearly showed the child's present level supported the fact that she had a SLD, by this time she had a greater discrepancy "gap" and that she qualified for different appropriate scientifically proven evidence based interventions and services under the IDEA, in the category of SLD. The CCSD IEP team, created an IEP, that was no different in services and interventions, from the child's previous IEP under OHI. Parent voiced her concerns at the IEP meeting, that the present levels were inconsistent with the IEE's data and that the goals were not measurable, and that because of this she would be having the child evaluated over the 2008 summer, in Texas by a Dyslexia evaluation "the Scottish Rite facility" for a more defined evaluation to identify her diagnosis and the

interventions, to support an IEP, that would allow the child to make progress in the general curriculum. Plaintiff was denied the right to utilize the authoritative resource of the Scottish Rite Hospital system in Texas, since she did not a reside in Texas, so she initiated by referral from the child's neurologist the "Dyslexia Research Institute" in Tallahassee, Florida a Dyslexia Evaluation. At no time, did any person in the IEP team, to include Dr. Elizabeth Mc Bride, Brian Castellani, and Laurence Ruble, inform, clarify, advise or provide the knowledge necessary for the Plaintiff /Parent, pursuant to (20 U.S.C. 1400, 1414, and 1415), to exercise her parental rights as an equal member of the IEP team, when voicing her concerns at the IEP meeting and that the CCSD had the responsibility to provide a FAPE, all 5 (five) IEE's support SLD, **see exhibits J.**

49.    On or around March 2008, the Plaintiff received an email with an attached letter, from FDOE ESE director, Bambie Lockman, in support of CCSD actions. Ms. Lockman, also never advised the parent that her child had never obtained a public school comprehensive learning or SLD evaluation. FDOE ESE department has a copy of the child's ESE file, and clearly Ms. Lockman, could have reviewed this file, identified the lack of appropriate evaluations and advised the Plaintiff of the same, she could have and should have also advised Defendant, Dr. Victoria Sartorio to investigate and stop the violation. This was all prior to the Plaintiff submitted her IEE's to CCSD, at her own expense, **see exhibits N.**

50.    Defendant' Victoria Sartorio, was contacted server times, by the Plaintiff via email, related to parents concerns of ineffective interventions and lack of appropriate services in her child IEP. Defendant ignored every request for help, clarification and

"parent education services", she displayed deliberate indifference to the parents request and right to exercise her procedural safeguards, under IDEA, **see exhibit R.**

51.     Because of the failure to CCSD to follow the mandates of IDEA, and informing the parent of the same, to include but not timed to, all relevant appropriate evaluations, withholding of information and failure to develop an IEP that would provide educational benefit, to the child, the Plaintiff obtained another IEE specifically a "Dyslexia Evaluation", July 2008, and submitted the results to CCSD.  The IEE diagnosed the child with multiple dyslexia related disabilities and emotional issues related to her severe educational deficiency, which support the child's present level of kindergarten performance, at 9 years old.  The child had an IQ of 121 and an ability to apply of 83 in 2006, see Florence County School Dist. IV v. Shannon Carter (4th Cir. 1991).

52.     Plaintiff requested mediation, August 2008, which was unsuccessful and parent is not privileged to say why, she attempted to have the IEP team incorporate the dyslexia diagnosis and all identified needs, intervention, and (SLD) findings in the IEP process and was unsuccessful, she documented the entire 2 part IEP meeting September 2008 and October 2008, where Mr. Laurence Ruble, advised the parent's advocate, that he was the "504 coordinator", she was not advised by the IEP team, to include Dr. Elizabeth McBride, that the IDEA a federal law, to prevent discrimination, give her rights, under her procedural safeguards, to enforce the provision of FAPE, see pages from transcript of IEP meeting, **see all exhibits in Q.**

53.     Plaintiff's attempts to advocate for her child, during the IEP process and submitted multiple private IEE's with proof and evidence of the child's failure to progress in the CCSD, which created a hostile environment, for the Plaintiff and the

child. The child was being seen by a private Dyslexia tutor and was making progress
with the tutor, but the child stated, to the Plaintiff "the teachers told her not to use the
techniques and strategies I was learning from the tutor, in the classroom", see Evans v.
Rhinebeck Central School Dist, (S.D. NY 1996), **see exhibits J and K.**

54.     On or around November 2008, Plaintiff meet with Lee County reading specialist
director, Dr. Larry Thian, and initiated an interim move, via the McKay scholarship, to
Pinewoods elementary school in the neighboring, Lee county school system.  Plaintiff
gave written notice, to the Superintendent of CCSD, of her intent more then 10 days,
prior to the move, see Gerstmyer v. Howard Co. Schools (MD 1994), **see exhibits O.**

55.     The child was "placed" by the parent in January of 2009 and the parent, but the
plaintiff was made to provide all school related transportation, Monday-Friday, to include
during the summer of 2009 for ESY, while under the McKay scholarship, see G. v.
Cumberland Valley (3rd Cir. 1999).

56.     The Plaintiff filed an initial written request for a due process hearing, *pro se* in
February 24, 2009 under IDEA and Section 504, violations, but then had to file an
addendum, to include Section 504 violations, on March 22, 2009, and an amended
complaint to secure both IDEA and Section 504, violations in her hearing.  The
evidentiary stage of the impartial due process proceeding took place on or about May 27-
29 2009 and commenced in August 26 and 27, 2009.  Plaintiff had hired an attorney to
enforce the Section 504 hearing, for CCSD and FDOAH refused to clarify if the impartial
hearing officers (hereinafter "IHO") had been contracted to hear both IDEA and Section
504, issues consecutively.  Plaintiff did not receive the decisions from the OHI until May
and June of 2010, 17 months later. In fact the IHO delayed the ruling further by calling a

telephone conference in April 2010, to clarify if she was being paid to rule under Section 504, citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), **see exhibits P.**

57.    All named Defendant's actions and violations, "Constructively Evicted" the Plaintiff from her home and her home state of Florida. The Defendant's actions support the Plaintiff's case of "deliberate Indifference" and acting in bad faith, they conspired by refusing to recognize the child's exceptionalities and multiple disabilities and her rights related to her disabilities, and all named violations of the provisions to protection, the child from discrimination.

58.    On May 28, 2010, the IHO issued a decision under IDEA (attached hereto and marked exhibit "A", wherein she holds the Plaintiff "parent" accountable for not complying with the provisional process of a FAPE and the child accountable for not making progress, under an IEP for ADHD/OHI.

59.    On June 16, 2010, the IHO issued a recommended order/decision under the Section 504 (attached hereto and marked exhibit " B", wherein she denies the Plaintiff rights under Section 504 and the ADA and attached is CCSB, final order dated July 28,2010 in support of IHO recommended order, (attached hereto and marked exhibit "C".

60.    Therefore, Terry L Dunn-Fischer, Plaintiff appealed the decisions of the IHO to this Honorable Court, *pro se* and requests a jury trial.

## APPEAL OF DECISIONS (IDEA AND SECTION 504) BY IHO

61.    Plaintiff incorporates by reference the allegations contained in paragraph 1 through 61 of Plaintiffs' Complaint as if rewritten herein.

62.    The constitutional requirement of due process includes two basic provisions: Notice and A fair hearing. Plaintiff was denied both.  CCSD failed to give notice of their

refusal to initiate and incorporate a Section 504 hearing, per the Plaintiff's addendum to Complaint March 2009. FDOE and FDOAH, failed to give notice to the Plaintiff of their intent to extend the 45 day hearing process an extra 465 days, **see exhibit I and P.**

63.    CCSD failed to follow the procedures set forth in IDEA (1997 and 2004) and Section 504, as to the sequence of decisions and mandates under child find and identification by refusing to evaluate the child, for eligibility during the 2005-2006 school year, based on child's lack of progress (need for retention) and parents request for evaluations and by refusing to do so without meaningful and knowledge informed consent by the parent, related to the withholding of the Plaintiff's procedural safeguards under IDEA and Section 504, see _Monroe v. Pape_, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961). These actions/procedural violations resulted in the child being denied the opportunity to obtain a FAPE, citing _Sch. Bd. v. K.C._, 285 F.3d 977, 982 (2002) _citing Rowley,_ 458 U.S. at 206-07, 102 S.Ct. at 3051.

64.    CCSD failed to follow the procedures set forth in the IDEA (1997 and 2004) as to the sequence of decisions and mandated parent participation in the development of the 2006-2007 IEP by deciding the placement and tailoring the IEP to suite that placement and by making such decisions without meaningful and knowledgeable informed consent by the parent. These procedural violations directly resulted in the denied of FAPE.

65.    CCSD failed to provide a FAPE set forth in IDEA and Section 504, in (2007-2008) by failing to identify ALL individual based disabilities, to include multiple disabilities in reading, writing, spelling, math, expression, and communication, by refusing to reevaluation, to monitoring and to providing support and services that were scientifically proven evidence based, interventions or to incorporate other or more

services, to meet the child's remedial needs, based on her present levels of performance (per objective testing) and clear lack of progress. They refused to allow all assessments and data provided by the parent, doctors, tutors, and student demonstration into the IEP process and restricted the child's opportunity to benefit from her education. They denied the parent her rights to "Written Notice of Refusal of the same" by making such decisions without meaningful and knowledgeable informed consent by the parent, they denied her a FAPE. These procedural violations directly resulted in the denial FAPE and restricted the Plaintiff from exercising her Procedural Safeguards under due process of law.

66.    CCSD failed to provide the Plaintiff, based on her disability, during the 2005-2009 period, her Procedural Safeguard's in a "full understanding of the process" fashion, under IDEA and withheld all knowledge of the Plaintiff's procedural safeguards/Parental Rights of due process of law, under Section 504. Due to CCSD failure and intentional withholding of all significant information and informed consent, the Plaintiff was denied her right to exercise, the parental provisions of the mandated procedures process set forth in the IDEA and Section 504, in a timely "early interventional fashion".

Plaintiff refers to FCRR :

"According to the Florida Center for Reading Research www.fcrr.org Technical Reports Dyslexia Technical Assistance Paper- States -schools can identify children with reading disorders in preschool or kindergarten. Serious reading difficulties are preventable with the right kind of intensive instruction provided early in a child's development. That window of opportunity closes early. After first grade, a student can still improve. However, those who do not receive early powerful interventions will always perform poorly on phonemic decoding, reading fluency and spelling. They will never be able to close the gap".

67.    CCSD failed to provide a FAPE from 2005-2009 by refusing to recognize the child's exceptionalities and failing to identify all of the child's needs, to include the

emotional needs associated with educational failure. CCSD refused to consider and provide the necessary interventions and services for the child to make progress in the general curriculum and to benefit from an education, due to their refusal to identify the child's multiple disabilities. They failed to utilize objective data based present levels, write measurable; annual goals and short-term objectives, include a level of commitment, monitor and modify the child's IEP, to address her lack of progress and need for intense remediation, and refused to further evaluate, change, and initiate more or other interventions, to assess her response to other interventions, as is mandated under IDEA to show prove objective data based progress. These procedural violations directly resulted in a denial of FAPE. As a result, the Plaintiff was forced to provide, at her own expense, the services of private tutoring, independent educational evaluations, and transport her to another public school, in the neighboring county, during the due process hearing phase, which caused great financial, emotional, and physical hardship on the entire family.

68. The IHO failed to follow the procedures set forth in the Florida Administrative Code and in the IDEA (1997 and 2004). FDOE and FDOAH failed to monitor, comply and enforce the IHO time sensitive ruling obligation, by allowing her the ability of extending the due process hearing time from 45 days to total 510 days. The FDOE and FDOAH allowing the proceeding to go 465 days beyond the 45 days time limit mandated by (20 U.S.C. 1415), (34 CFR 300.528). It took the IHO 300 days after the conclusion of the evidentiary hearing to issue a decision, under IDEA and Section 504. Such delay had caused the Plaintiff to use up all of her resources, to provide the child an appropriate education.

69.     The IHO failed to follow the procedures set forth in the IDEA, of being a non-biased' impartial hearing officer as evidence by: her self creating "findings of fact" that are inconsistent with the record, evidence and testimony. The Hearing officer made a finding of fact, that states Mr. Laurence Ruble, offered to perform an evaluation, in May of 2006, over the summer, prior to the return to school in August, this statement is a IHO created and there is no documentation or testimony by anyone that this finding is true.

70.     The IHO abused her discretion by disregarding expert medical/educational evidence and the testimony made by Dr. Hardman, deeming her "incompetent" as per her findings of multiple exceptionalities and disability diagnosis, pursuant to her extensive (SLD) dyslexia evaluation process, on the bases of lack of contact, while relying solely upon and giving more weight to Mr. Laurence Ruble's, who was the head of psychological services and withheld the parent rights and procedural safeguards process from the parent, testimony related to his opinions of testing material, time frame, and disputed diagnosis's. The IHO, had prior notice from CCSD that Mr. Ruble's employment status, was being terminated, without his knowledge. The IHO also disregarded objective data based, State tests, present reading level of 1% and relied on CCSD teachers, subjective testimony of present levels of performance and progress.

71.     The IHO abused her discretion, because her findings of fact are subjective, myopic in approach, self created and are based solely on the school employee's opinions and self preserving testimony. She clearly ignores, shows contempt and intentional blindness of all Plaintiffs' exhibits and evidence based proof. She ignored and refused to clarify and rule on time sensitive motions, ie: to incorporate evidence during the due process hearing phase and refused to allow Plaintiff's to submit evidence that was "best

and true evidence" into evidence, the 2008 IEP transcript of CCSD's refusal to comply with the provisions of IDEA during the IEP process of 2008, cites <u>Zachary Deal v. Hamilton Dept of Education</u> (TN) Due Process Decision 2001).

72.     The IHO abused her discretion by giving more weight and relying solely upon CCSD employees', who by themselves were "individuals who violated the provisions under IDEA and Section 504, by withholding knowledge and imperative information, from the parent" testimony which was subjective, self preserving, and inconsistent with the data and evidentiary record, citing <u>JP v. Sch. Bd of Hanover County VA</u> (4th Cir. 2008). The IHO "went out of her way" to make up findings in support of CCSD.

73.     The IHO failed to follow the procedures, set forth in Section 504, as to the lack of a statue of limitations, and with withholding to the Plaintiff being denied *in toto*, the knowledge of her Notice of parental rights and Procedural Safeguards, upon the request of parent for evaluations and services from 2005-2009, see the <u>Florida Administrative Code (FAC): Florida Rules; 6A-6.0331:</u> General Education Intervention Procedures, Identification, Evaluation, Reevaluation and the Initial Provision of Exceptional Education Services, and Consequently, the practices described above, including, but not limited to all named Defendants actions, violated the: <u>(FAC): Florida Rules 6A-6.03028,</u> Development of Individual Educational Plans for Students with Disabilities. § 1003.57(5)

74.     The IHO errors in her decisions, by granting "CCSD the protection of the Statute of Limitations" under IDEA 2004 and Section 504, violations. CCSD should not have been granted this protection of their violations, because the Plaintiff was denied the knowledge and imperative information to exercise her procedural safeguards as early as 2005, which lasted until March of 2008, when she was given written notice of refusal to

perform comprehensive evaluates, a SLD evaluation, for the child's exceptionalities, as was her parental request in 2005 and per her procedural safeguard process rights.

75.    The IHO errors in her decisions, by referring to Florida state statues to support her decisions, when FDOE had not revised the state statues to be consistent with the IDEA (2004) while the child was a CCSD student, CCSD was advised by Bambie Lockman, employee of FDOE to use the 1997 IDEA regulations. Therefore the applicable, state statues were consistent with IDEA 1997, which did not have a statue of limitations.

76.    The IHO abused her discretion by her blind denial of the child's multiple exceptionalities/disabilities related to her dyslexia which is recognized under SLD, IDEA and Section 504, by using a state statue dated 2008, to protect CCSD's refusal to identify the child's SLD, "dyslexia" as a valid reason, to withhold appropriate services.

77.    The IHO abused her discretion by taking a myopic approach to the ongoing and data based findings of all the IEE's and conspired to undiagnosed the child's multiple disabilities, except for the diagnosis of ADHD/ADD and support the lack of appropriate evaluations needed to support or deny only the category needs of CCSD's limited services and accommodations under OHI. The Hearing officer made a finding of fact, that states: Parent "misunderstood" when the history of this case, the evidence and actions of the Plaintiff clearly shows the Plaintiff was mislead and uninformed. Parent requested in parent comment section, of 12/2005 report card, "I am requesting that Annalyse be placed in a special reading class, if possible, so that she may get extra support" **see exhibit E-1 A and B.** Parent did not "demand a one-on-one tutor", as per the IHO's inflammatory and untrue statement.

78.    The IHO abused her discretion by denying the Plaintiff's due process hearing claims, by placing the responsibility to comply with the procedural process on the parent for the provision of a FAPE and not on the CCSD, as evidence by implying that because the parent didn't follow the process then CCSD is not liable for their actions, of not following the procedural process under (20 U.S.C. 1400) as spelled out in the provisions of a FAPE, under IDEA and Section 504. It is not the parents responsibility to provide a FAPE, it is the Parent's right to exercise, her procedural safeguards and the districts and FDOE responsibility to provide and ensure the provision of a FAPE.

79.    The IHO failed to clarify, prior to the initiation of the due process hearing and at the start of the evidentiary hearing process, what IDEA regulations and state statues, she would be using to base her decisions on, this withholding of clarification and CCSD advance knowledge of which applied at the time the child was a student, created an un-equal playing field, for the Plaintiff and her non-special education attorney and defies the Supremacy Clause.

80.    The IHO abused her discretion by applying the statue of limitation Section 300.511(e), the under IDEA 2004 in her decisions, cites Tereance D. v. School District of Philadelphia, (2008): thus, if the complained of conduct occurred when no statute of limitations was included in the IDEA, then IDEA-2004's statute of limitations could not be applied to bar the claim. The record and evidence proved that the Plaintiff was prevented by the Defendant's by withholding written Notice of imperative information to allow the Plaintiff to exercise, per procedural safeguards, citing IDEA: (Section 300.511(f)), consistent with section 615(f)(3)(D) of the Act, provides explicit exceptions to the statute of limitations for filing a due process complaint. These exceptions include

situations in which the parent is prevented from filing a due process complaint because the LEA withheld from the parent information that is required to be provided to parents under these regulations, such as failing to provide prior written notice or a procedural safeguards notice that was not in the parent's native language, as required by Section 300.503(c) and 300.504(d), respectively. Additionally, in States using the timeline in Sec. 300.511(e) (i.e., "within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint"), The parent obtained the written knowledge, from Defendant Mr. Ruble in March of 2008 and filed a request for a due process hearing in February 2009, **see exhibits P**.

81.    The IHO failed to follow the two separate and Independent procedural due processes under IDEA and Section 504, by intertwining, combining, and referring her Section 504, decision "recommended order" with her IDEA ruling. The IHO based Section 504 decision, on her self created, unsupported by evidence, finding of fact in her IDEA decision.  She failed to comply with the different and unique definition of FAPE under Section 504 and IDEA, in her decisions.  She abused her discretion by protecting CCSD's violations recognized violations of the denial of FAPE under Section 504, by referring to and incorporating the IDEA 2004 statue of limitations, thus she denied the Plaintiff her due process of law under both, see <u>W.B. v. Matula</u> (3rd Cir. 1995).

## RELIEF

WHEREFORE, Plaintiff Terry L. Dunn-Fischer, individually *pro se*, (28 U.S.C. 1654), requests this court enter an Order requiring that the Administrative Record, i.e., the pleadings, exhibits, transcripts, motions, and all orders, issued by the IHO, under IDEA and Section 504, be filed with this Court, and that the Plaintiff be granted a jury

31

trial, pursuant to her rights under her Procedural Safeguards and right to Appeal the

IHO's administrative decisions, under IDEA 1997 and 2004: (20 U.S.C. 1415) and

Section 504, (29 U.S.C. 794) and the ADA (42 U.S.C. 1983), (42 U.S.C. 1988)  and

requests to be awarded all costs, to include all out of pocket expenses for evaluations,

tutoring, attorney fees, placement and transportation costs, compensatory education for

4 (four) years, and all damages, actual and punitive, consistent with and associated with

the Defendant's actions and violations which created an initial and continues denial of a

FAPE, as per her rights under IDEA (20 U.S.C. 1415), Section 504 (29 U.S.C. 794) and

(42 U.S.C. 1983).  She also requests the ability to submit all receipts and documents that

support all related costs and losses and the child's most recent educational evaluation

criteria as additional exhibits, cites Shannon Carter v. Florence County Sch. Dist. IV. (SC

1990)

   THEREFORE, Plaintiff TERRY L. DUNN-FISCHER individually, in *pro se* fashion

respectfully submits and files this Second Amended Complaint and attached exhibits in

document and in CD format as a curative action, to this courts most recent Orders

(Doc.#52 and 53) and Defendant's Motions to dismiss, in *toto*.  Plaintiff has given notice

of her intent of the same, to Defendant's FDOE and FDOAH Attorney of record, in her

attached Motion requesting leave to do so filed this 18 th day of April 2011, In the United

States District Court, Middle District of Florida, FT. Myers Division

Terry L. Dunn-Fischer,
Plaintiff, Pro-Se
244 E. Isabella Ave
Mesa, AZ. 85204
239-298-1154

32

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was sent by regular U.S. first class mail, postage prepaid, with attachments, and in CD form attachments of FDOAH's rulings and recommended orders, under IDEA and Section 504: to Jon Fishbane, Esq., District General Counsel, District School Board of Collier County, Florida,  <u>Attorney of record</u>, and its individual Defendants (hereinafter " known as individual Defendants" and "its employees")  at 5775 Osceola trail, Naples Florida 34109 and Yvette Acosta MacMillan, Assistant Attorney General,  <u>Attorney of record</u> for FDOE and FDOAH at 501 East Kennedy Boulevard, Suite 1100, Tampa, Florida 33602 on this <u>18 th</u> day of April 2011.

Terry L. Dunn-Fischer, Plaintiff, *pro se.*